**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

KFC CORPORATION,

                Plaintiff,

                                        Civil Action No. 3:10cv-612 M

    v.

ASHOK SAHADEVAN and
NILEM SAHADEVAN.


                Defendants.


## COMPLAINT

Plaintiff KFC Corporation ("KFCC"), for its complaint against defendants Ashok

Sahadevan and Nilem Sahadevan (collectively the "Defendants"), states as follows:


## PARTIES AND JURISDICTION

1.     Plaintiff KFCC is a corporation organized under the laws of the State of

Delaware, with its principal place of business in Louisville, Kentucky.

2.     Upon information and belief, Defendants Ashok Sahadevan and Nilem

Sahadevan, are individual citizens residing in California.

3.     This court has original jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28

U.S.C. § 1338(a) over the claims asserted under the Lanham Act, 15 U.S.C. § 1051 et seq.  This

court also has original jurisdiction over the claim of unfair competition alleged herein pursuant to

28 U.S.C. § 1338(b).  This court also has supplemental jurisdiction over all related claims

alleged herein pursuant to 28 U.S.C. § 1367(a).

## FACTS

### KFCC'S Business

4.       For decades, KFCC has operated and licensed others to operate restaurants under the "Kentucky Fried Chicken" and "KFC" names, pursuant to the terms of a valid franchise agreement and its franchise system.

5.       Through the expenditure of significant time, skill, effort and money, KFCC has developed and is the sole and exclusive user of a distinctive food service system (the "KFC System") under which food is sold to the public from KFC Restaurants.  The KFC System includes, among other things, the following elements:

(a)       Distinctive and characteristic trademarks and service marks, including without limitation, "Kentucky Fried Chicken," "KFC," "It's Finger Lickin' Good," Colonel Sanders, and other related trademarks, service marks, trade names, copyrights, and all ancillary signs, symbols, or other indicia used in connection or conjunction with said marks, whether or not registered with the United States Patent and Trademark Office (the "KFC Marks");

(b)       A public image that each KFC Restaurant is a unit in an established restaurant system and that all are operated with uniform standards of service and product quality and portions; and

(c)       Methods and procedures for the preparation and serving of food and beverage products;

(d)       Special ingredients, confidential recipes for food products and distinctive service accessories;

(e)       Methods of achieving quality control and procedures designed to be advantageous to KFC restaurant operators and consumers;

(f)     Plans and specifications for distinctive premises, featuring characteristic interior and exterior style; design, décor, furnishings, equipment layout and interior and exterior signage;

(g)     A uniform method of operating which is described in the "KFC Confidential Manual of Operations" and in other communications to franchisees (all such other communications and any supplements or additions thereto being hereinafter collectively referred to as the "KFC Confidential Manual");

(h)     Such exclusive copyrights and trade secrets as have been and may from time to time be developed, which are owned by KFCC and which are disclosed to its franchisees in confidence in connection with the construction and operation of KFC Restaurants and pursuant to the terms of a KFC franchise agreement.

6.     The KFC Marks have been used exclusively by KFCC and its designated licensees in connection with the operation of KFC Restaurants.  There are more than 11,000 KFC outlets in more than 80 countries and territories around the world, serving some 8 million customers each day.

7.     The following principal Kentucky Fried Chicken/ KFC trademarks, service marks, and commercial symbols, among others, have been registered by KFCC on the Principal Register of the United States Patent and Trademark Offices:

KENTUCKY FRIED CHICKEN          Registration Nos. 815,167 (September 13, 1966) and 838,895 (November 14, 1967)

KFC          Registration Nos. 979,050 (February 19, 1974) and 1,209,310 (September 14, 1982)

- 3 -

| IT'S FINGER LICKIN' GOOD | Registration Nos. 3,348,337 (December 4, 2007) and 3,035,298 (December 27, 2005) |
| COLONEL SANDERS | Registration Nos. 806,104 (March 22, 1966) and 810,835 (July 5, 1966) |
| 2006 COLONEL SANDERS | Registration No. 3,446,928 (June 10, 2008) |
| ORIGINAL RECIPE | Registration No. 1,303,969 (November 6, 1984) |
| KENTUCKY GRILLED CHICKEN | Registration No. 3,694,656 (October 13, 2009) |

8.      Additional registered KFC Marks are listed in Exhibit A.

9.      The foregoing registrations are in full force and effect and cover the goods and services identified on the registration certificates.  These registrations are valid, subsisting, and incontestable under the Lanham Act, 15 U.S.C. § 1065.

10.     Since its first use, the name "Kentucky Fried Chicken" and the name "KFC" have become universally associated with KFCC's unique and particular plan of food service operation.  As a result, KFCC owns common law trade name rights and rights in the names "Kentucky Fried Chicken" and "KFC" and the other KFC Marks.

11.     By virtue of the long use and promotion and resulting fine public reputation of the trade names "Kentucky Fried Chicken" and "KFC," there is secondary meaning in the names "Kentucky Fried Chicken" and "KFC" and the KFC Marks in that the public associates the products sold in connection with the KFC Marks as originating from a single source.

12.     KFCC has developed, advertised, and promoted its trademarks and service marks at great expense so that the KFC Marks have become valuable assets of substantial and

- 4 -

inestimable worth to KFCC.  The KFC Marks are symbols of quality foods served by KFCC's

chain of Restaurants around the world.

13.     KFCC has a vital economic interest in protecting its name and the KFC Marks.

The preservation and protection of its name and the KFC Marks are essential to the maintenance

of the quality of KFC Restaurants and the goodwill and reputation associated with them.


## The Reinstated Franchise Agreements, Other Contracts, and Contract Obligations

14.     KFCC initially issued a KFC Franchise Agreement, dated August 22, 2007, to

Ashok Sahadevan (the "Franchisee"), for the operation of a KFC restaurant located at 1019

Myrtle Avenue in Eureka, California and identified as J051-008.

15.     KFCC also issued an initial KFC Franchise Agreement, dated August 22, 2007,

to the Franchisee to operate a KFC Restaurant located at 823 Broadway in Eureka, California

and identified as J051-009.

16.     KFCC also issued an initial KFC Franchise Agreement, dated May 23, 1978, to

the Franchisee to operate a KFC Restaurant located at 512 East Main Street in Barstow,

California and identified as J051-011.

17.     KFCC also issued an initial KFC Franchise Agreement, dated November 23,

2002, to the Franchisee to operate a KFC Restaurant located at 270 "M" Street in Crescent City,

California and identified as J051-012.   Collectively, these initial franchise agreements will be

referred to as "Initial Franchise Agreements," and the four KFC Restaurants as "Restaurants."

18.     KFCC issued a termination notice for the Initial Franchise Agreements by letter

dated December 11, 2008, due to the Franchisee's failure to cure the noticed defaults by

complying with the Initial Franchise Agreements' requirements to pay the required royalties.

- 5 -

19.    Following negotiations, KFCC and the Franchisee entered into documents dated August 25, 2009, entitled "Reinstatement Agreement," by which KFCC conditionally agreed to reinstate the Franchisee's licenses to operate the Restaurants as KFC restaurants for a limited period of time, on the express condition that the Franchisee fulfill various obligations specified in the reinstatement agreements and attached addenda.

20.    A true and correct copy of the Reinstatement Agreement and Addendum for the Myrtle Avenue Restaurant is attached as Exhibit B and is identical in all pertinent respects to the Reinstatement Agreements and Addenda for the other three Restaurants.  Collectively, the Reinstatement Agreements with their Addenda for all four Restaurants will be referred to as the "Reinstatement Agreements."

21.    Pursuant to the Reinstatement Agreements, the Franchisee agreed that the Initial Franchise Agreements were terminated on December 11, 2008.  Reinstatement Agreements, paragraph I, Exhibit B.

22.    The Addenda to the Reinstatement Agreements state that the Franchisee voluntarily entered into the Reinstatement Agreements for the special and limited purpose of selling the Restaurants to a party approved by KFC in writing, pursuant to KFC's approval criteria.  Reinstatement Agreements, Addendum I, Exhibit B.

23.    Pursuant to the Reinstatement Agreements, the Franchisee further agreed to submit the name of a proposed buyer for the Restaurants and a fully-executed, proposed Purchase Agreement for both Restaurants no later than January 27, 2010.  Reinstatement Agreements, Addendum II, Exhibit B.

24.    Pursuant to the Reinstatement Agreements, the Franchisee also executed a Reinstated Franchise Agreement for each Restaurant, dated August 24, 2009.   Reinstatement

Agreements, paragraph III B (1).  Collectively, the Reinstated Franchise Agreements for the four

Restaurants will be referred to as the "Reinstated Franchise Agreements."

25.     A true and correct copy of the Reinstated Franchise Agreement for the Myrtle

Avenue Restaurant is attached as Exhibit C, and is identical in all pertinent respects to the

Reinstated Franchise Agreements for the other three Restaurants.

26.     Pursuant to the terms and limitations of the Reinstated Franchise Agreements

and Reinstatement Agreements, KFCC granted to the Franchisee a temporary license to use

KFCC's trademarks, service marks, and nationally recognized methods of preparation and

service of KENTUCKY FRIED CHICKEN and KFC brand chicken and other food products at

the Restaurants ("License") for a limited period of time, pending the sale of the Restaurants to a

proposed buyer.  Reinstated Franchise Agreements, paragraph 3.1, Exhibit C; Reinstatement

Agreements, Addendum I, Exhibit B.

27.     Pursuant to the Reinstated Franchise Agreements, the Franchisee was obligated

to submit monthly sales reports and pay royalties to KFCC on a monthly basis in consideration

for the License granted by KFCC.   Reinstated Franchise Agreements, paragraph 8.1, Exhibit C.

28.     The Reinstatement Agreements stated that the period of reinstatement and the

Reinstated Franchise Agreements would terminate on April 27, 2010.  Reinstatement

Agreements, Addendum III A and C, Exhibit B.

29.     Pursuant to the Reinstatement and Reinstated Franchise Agreements, the

Franchisee also executed a reinstated advertising agreement for each Restaurant with the KFC

National Council and Advertising Cooperative, Inc. ("National Co-Op."), by documents dated

August 25, 2009.   Reinstatement Agreements, paragraph III B (2), Exhibit B; Reinstated

Franchise Agreements, paragraph 10.2, Exhibit C.    Collectively, the Reinstated Advertising

Agreements for the Restaurants will be referred to as the "Reinstated Advertising Agreements," and collectively with the Reinstatement Agreements and the Reinstated Franchise Agreements, will be referred to as "Reinstated Agreements."

30.     A true and correct copy of the Reinstated Advertising Agreement for the Myrtle Avenue Restaurant is attached as Exhibit D, and is identical in all pertinent respects to the Reinstated Advertising Agreements for the other three Restaurants.

31.     Pursuant to the Reinstated Advertising and Reinstated Franchise Agreements, the Franchisee was obligated to make monthly advertising fee payments to the National Co-Op. Reinstated Advertising Agreements, paragraph 2(a), Exhibit D; Reinstated Franchise Agreements paragraph 10.1, Exhibit C.

32.     The Reinstatement Agreements additionally obligated the Franchisee to remain current in all financial obligations and debts to KFC and the National Co-op, stating that "during the period of reinstatement, Franchisee must continue to pay, when due, all future Royalty payments, KFC National Council and Advertising Cooperative, Inc. ("National Co-op") payments, and Local Co-op payments."  Reinstatement Agreements, Addendum III B, Exhibit B.

33.     Defendant Nilem Sahadevan (the "Guarantor") signed a guaranty agreement for each Restaurant, by documents dated August 25, 2009.  Collectively, the four guaranty agreements will be referred to as the "Guaranty Agreements."

34.     True and correct copies of the Guaranty Agreements for the Restaurants are attached as Exhibit E.

35.     Pursuant to the terms of the Guaranty Agreements, the Guarantor agreed to personally guarantee the performance, payment, and discharge of all of the Franchisee's indebtedness and obligations to KFCC and the National Co-Op under all the contracts executed

- 8 -

by the Franchisee, including without limitation, the Reinstated Agreements.  Guaranty Agreements, Exhibit E.

### Expiration of the Resinstated Agreements

36.     The Franchisee did not submit the name of a proposed buyer for the Restaurants and a fully-executed, proposed Purchase Agreements between the Franchisee and such proposed buyer for the Restaurants by January 27, 2010 as required by the Reinstatement Agreements, Addendum II, Exhibit B.

37.     By letter dated March 19, 2010, KFC reminded the Franchisee of his obligations under the Reinstatement Agreements, stated that the Franchisee could submit the name of a proposed buyer for the Restaurants and a fully-executed, proposed Purchase Agreements between the Franchisee and such proposed buyer for the Restaurants within the next seven days, and reminded the Franchisee that the Reinstated Franchise Agreements terminated on April 27, 2010.   A true and correct copy of the March 19, 2010 letter is attached as Exhibit F.

38.     The Franchisee failed to submit the name of a proposed buyer for the Restaurants and a fully-executed, proposed Purchase Agreement between the Franchisee and such proposed buyer for the Restaurants by the extended deadline.

39.     The Reinstated Agreements expired according to their own express terms on April 27, 2010.  Reinstatement Agreements, Addendum III A and C, Exhibit B.

40.     By letter dated June 24, 2010, KFCC notified the Franchisee that he had failed to sell the Restaurants to an approved buyer in compliance with the terms of the Reinstatement Agreements and that the Reinstated Agreements had terminated ("Notice Letter").  A true and correct copy of the Notice Letter is attached as Exhibit G.

41.     Upon expiration and termination of the Reinstated Agreements and pursuant to their explicit terms, the Franchisee and the Guarantor were required to take the following actions at the Franchisee's sole cost and expense at the Restaurants ("Post-Termination Obligations"), including but not limited to:

(a)     Immediately cease doing business as a KFC Restaurant and discontinue the use of KFC's Marks, and the KFC System;

(b)     Return to KFCC the KFC Confidential Manual and all trade secret and confidential materials; and

(c)     Promptly de-image the Restaurants (renovate or refurbish) from them from their present appearance as KFC Restaurants, sufficiently to eliminate any possibility of confusion in the mind of the public that the Restaurants are in any manner connected with KFCC.

Reinstatement Agreements paragraph IV, Exhibit B; Reinstated Franchise Agreements paragraph 3.4, Exhibit C.

42.     The Post-Termination Obligations of a Franchisee whose License has been terminated or expired are further detailed in the document entitled "KFC Policy on Discontinuing Use of Trademarks and System at Closed Kentucky Fried Chicken Restaurants" (the "Policy"), which was attached to the Notice Letter.  Notice Letter, Exhibit G.

43.     In the Notice Letter, KFC further confirmed and reemphasized these Post-Termination Obligations, and demanded that the Franchisee immediately take all such actions with respect to the Restaurants.  Notice Letter, Exhibit G.

44.     Due to the Defendants' continued unauthorized operation of the Restaurants, KFCC further demanded that the Franchisee cease operation of the Restaurants and comply with

all Post-Termination Obligations, by letter dated July 12, 2010 ("First Demand Letter").  A true and correct copy of the First Demand Letter is attached as Exhibit H.

45.     Following additional negotiations at the Franchisee's request, KFCC agreed to permit the Franchisee until September 1, 2010 to close and de-image the Restaurants by letter dated July 23, 2010 ("Letter Agreement").    A true and correct copy of the Letter Agreement is attached as Exhibit I.

46.     When the negotiated deadline to close and de-image the Restaurants expired and the Franchisee failed to comply with his agreement to complete the Post-Termination Obligations by September 1, 2010, KFCC sent a second demand letter by document dated September 7, 2010 ("Second Demand Letter"), demanding that the Franchisee cease operation of the Restaurants and comply with all Post-Termination Obligations.   A true and correct copy of the Second Demand Letter is attached as Exhibit J.

47.     The Policy, detailing the required Post-Termination Obligations required by the Reinstated Agreements, was attached to the Notice Letter, and the First and Second Demand Letters.

48.     Despite the obligations of the Reinstated Agreements, the expiration of the Reinstated Agreements, the Franchisee's agreement to close and de-image the Restaurants, Notice and Demand, the Defendants (as the Franchisee and the Guarantor) continue to operate the Restaurants without a License or authorization from KFCC and have failed to otherwise comply with their Post-Termination Obligations.

## COUNT I

### (Declaratory Judgment)

49.     The Reinstated Agreements expired according to their own express terms on April 27, 2010.  Reinstatement Agreements, Addendum III A and C, Exhibit B.

- 11 -

50.     Despite the expiration of the Reinstated Agreements and the contractual Post-Termination Obligations, the Defendants (as the Franchisee and the Guarantor) continue to operate the Restaurants as KFC Restaurants, and to use and display, without license, KFCC's trademarks and service marks.  The Franchisee continues to hold himself out as KFC Franchisee.

51.     This action involves an actual controversy between the parties, within the scope and meaning of 28 U.S.C. §§ 2201-2202.

52.     Pursuant to the federal Declaratory Judgment Act (28 U.S.C. § 2201 et seq.), KFCC is entitled to a declaratory judgment that the Reinstated Agreements between KFCC and the Franchisee expired effective April 27, 2010 pursuant to their terms.

53.     KFCC is also entitled to a declaratory judgment by this court, pursuant to 28 U.S.C. § 2201, that the Defendants: (a) are not authorized to use KFC's Marks, (b) are not authorized to operate the Restaurants as KFC Restaurants, (c) are not authorized to hold themselves out as a KFC Franchisee, and (d) are required to comply with the terms of the Reinstated Franchise Agreement by paying the required royalties and advertising fees.

## COUNT II

### (Breach of Contract –Reinstated Agreements)
### (Damages and Injunctive Relief)

54.     KFCC and the Franchisee executed Reinstatement Agreements, dated August 25, 2009, and Reinstated Franchise and Advertising Agreements for the Restaurants, dated August 24-25, 2009.  Exhibits B-D.

55.     The Reinstated Agreements expired according to their own express terms on April 27, 2010.  Reinstatement Agreements, Addendum III A and C, Exhibit B.

- 12 -

56.      Upon expiration of the Reinstated Agreements and pursuant to their explicit terms, the Defendants (as Franchisee and the Guarantor) were required to comply with all Post-Termination Obligations.  Reinstatement Agreements paragraph IV, Exhibit B; Reinstated Franchise Agreements paragraph 3.4, Exhibit C.

57.      In breach of the Reinstated Agreements and their contractual Post-Termination Obligations, the Defendants (as the Franchisee and the Guarantor) have continued to operate the Restaurants as KFC Restaurants, and to use and display KFC's Marks after the expiration of the License to do so.

58.      The Franchisee continues to hold himself out as a KFC Franchisee, using KFC's Marks without a License or other right to do so.

59.      Pursuant to the Reinstated Agreements, the Franchisee was obligated to submit sales reports and pay royalties to KFCC on a monthly basis in consideration for the License granted by KFCC and to pay monthly advertising fees to the National Co-Op.  Reinstatement Agreements, paragraph III B, Exhibit B, Reinstated Franchise Agreements, paragraphs 8.1, 10.1, Exhibit C; Reinstated Advertising Agreements, paragraph 2(a), Exhibit D.

60.      The Franchisee's obligations to the National Co-Op were for the benefit of KFCC and may be enforced by KFCC.  Reinstated Franchise Agreements, paragraph 10.5, Exhibit C.

61.      The Franchisee has breached the Reinstated Agreements by failing to submit monthly sales reports, failing to pay the royalties that are due to KFCC, and failing to pay the advertising fees that are due to the National Co-Op during the operation of the Restaurants as KFC restaurants.

- 13 -

62.      The Franchisee's failure to pay the royalties and advertising fees when due constitute a material breach of the Reinstated Franchise Agreements.  Reinstated Franchise Agreements, paragraph 8.3, Exhibit C.

63.      KFCC has performed all of its obligations under the Reinstated Agreements.

64.      KFCC has no adequate remedy at law for the Defendants' breaches of the Reinstated Agreements by their continued operation of the Restaurants as KFC Restaurants, and their continued unauthorized display and use of KFC's Marks, and distinctive architectural designs in connection with the Restaurants without a License to do so.  Therefore, KFCC is entitled to injunctive relief commanding specific performance of the Post-Termination Obligations required by the Reinstated Agreements.  Reinstatement Agreements paragraph IV, Exhibit B; Reinstated Franchise Agreements paragraph 3.4, Exhibit C.

65.      KFCC is also entitled to judgment on its claims for royalty and advertising payments due and owing under the Reinstated Franchise and Advertising Agreements, against the Defendants jointly and severally.

66.      KFCC is also entitled to recover a late payment charge at the rate of 1 1/2% of all royalties for each month or partial month cumulative during which they are due and unpaid. Reinstated Franchise Agreements, paragraph 8.3, Exhibit C.

67.      KFCC is also entitled to recover a finance charge at the rate of 10% per annum for all advertising fees not paid within sixty (60) days of their due date.  Reinstated Advertising Agreement, paragraph 2(b), Exhibit D.

68.      In addition to judgment entered in its favor, KFCC is entitled to recover its reasonable attorneys' fees, court costs and expenses in connection with this action.

- 14 -

Reinstatement Agreements, paragraph VII C, Exhibit B; Reinstated Franchise Agreements, paragraph 20.3, Exhibit C.

## COUNT III

### (Breach of Contract – Guaranty Agreements)

69.     The Defendant Nilem Sahadevan (the "Guarantor") signed the Guaranty Agreements for the Restaurants agreeing to guarantee the performance, payment, and discharge of all of the Franchisee's indebtedness and obligations to KFCC and the National Co-Op under the Reinstated KFC Franchise and Advertising Agreements and other contractual obligations. Guaranty Agreements, Exhibit E.

70.     Despite the expiration of the Reinstated Agreements, and the Franchisee's failure to perform his Post-Termination Obligations, the Guarantor has failed to perform the Franchisee's obligations as required by the terms of the Guaranty Agreements, which require among other obligations, the Franchisee to cease operating the Restaurants and to completely de-image the Restaurants so that they no longer use and display KFC's Marks.

71.     Further, the Guarantor has failed to pay all royalties and advertising fees due from and unpaid by the Franchisee under the terms of the Reinstated Agreements.

72.     Because the Franchisee has failed to perform his obligations to KFCC arising out of the Reinstated Agreements, the Guarantor is jointly and severally liable with the Franchisee for: (a) complying with the Franchisee's Post-Termination Obligations, and the other injunctive relief to which KFCC is entitled; (b) all damages awarded KFCC for breach of contract, trademark infringement, unfair competition, interest and late charges; and (c) KFCC's reasonable attorneys' fees, court costs, interest, and expenses in connection with this action.

KF000:KF116:802697:1:LOUISVILLE

## COUNT IV

### (Trademark Infringement)

73.     KFCC is the owner of various trademarks and service marks (collectively, the "KFC Marks"), which are registered in the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. §§ 1051 and 1053).  Several of the KFC Marks are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  See partial list of KFC's Marks, Exhibit A; see also Reinstated Franchise Agreements pp 25-26, Exhibit C.

74.     KFCC has given notice to the public of its registration of the KFC Marks as provided in the Lanham Act, 15 U.S.C § 1111.

75.     KFCC has developed its trademarks and service marks at great expense so that today they are valuable and irreplaceable assets.  Additionally, KFCC has invested substantial sums in advertising and promoting its goods and services under the KFC Marks in connection with the marketing and sale of its services and related goods by, among other things, prominently displaying the KFC Marks on its Restaurants, signs, menus, containers and displays associated therewith.

76.     As a result, the KFC Marks are distinctive and have become favorably known in the minds of the purchasing public generally throughout the United States and various foreign countries as signifying KFCC as the source of high quality, reliable restaurant services and related goods.  The KFC Marks are valuable and irreplaceable assets.

77.     KFCC polices the use of its trademarks and service marks at great expense and effort, and demands high quality and compliance with its standards to protect the value of the KFC Marks.

- 16 -

78.     The Franchisee, solely by reason of the License from KFCC, had authority to use the KFC Marks in accordance with the terms and conditions of the Reinstated Franchise Agreements, pursuant to paragraph 3.1 of the Reinstated Franchise Agreements, Exhibit C.

79.     Upon expiration of the Reinstated Agreements, the Franchisee's License and authority to use the KFC Marks was revoked, and all rights to such Marks reverted to KFCC, at which time the Franchisee was required to immediately discontinue use of all KFCC trademarks, service marks, trade names, trade secrets, and processes owned or developed by KFCC.  See Reinstated Franchise Agreements, paragraph 3.4, Exhibit C; Reinstatement Agreements, paragraph IV, Exhibit B.

80.     Despite the expiration of the Reinstated Agreements, and despite demand by KFCC, the Defendants (as Franchisee and Guarantor) have failed to cease doing business as a KFC Restaurant at the Restaurants and to cease and discontinue their use of the KFC Marks. The Franchisee continues to portray the Restaurants as KFC Restaurants and to use, without a License or other right, the KFC Marks.  The Franchisee continues to hold himself out as a KFC Franchisee.

81.     The Franchisee's continued use in interstate commerce of KFC Marks is an infringement of KFCC's rights in those marks in violation of 15 U.S.C. § 1114(1) and infringes upon KFCC's goodwill, reputation, trademarks, and service marks; creates a likelihood of injury to KFCC's business reputation; causes substantial likelihood of confusion as to the relationship, if any, between KFCC and the Franchisee; creates the appearance that the Franchisee is still a duly licensed franchisee of KFCC; and otherwise competes unfairly with KFCC.

82.     The Franchisee's acts of infringement of the KFC Marks entitle KFCC to recover such monetary relief to which it is entitled pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees, against the Franchisee and the Guarantor.

83.     The Franchisee's acts of infringement of the KFC Marks also have caused and will continue to cause irreparable injury to KFCC if not restrained by this court from further violation of KFCC's rights.  KFCC has no adequate remedy at law, and therefore seeks injunctive relief under 15 U.S.C. § 1116.

## COUNT V

### (Federal Unfair Competition)

84.     The Franchisee, after the expiration of his License to use the KFC's Marks in the operation of the KFC Restaurants under the Reinstated Franchise Agreements, and with the intent and purpose of misleading the trade and the public, has continued to operate the Restaurants as KFC Restaurants and to use KFCC's trademarks and service marks.

85.     The Franchisee's unlicensed use of KFC's Marks comprises a false designation of origin or false representation, and constitutes the utilization of false descriptions and representations in interstate commerce.  The Defendants are falsely representing themselves to the public as a KFCC licensee.

86.     The Franchisee's acts are in violation of 15 U.S.C. § 1125(a).

87.     The Franchisee's acts have caused and will continue to cause irreparable injury to KFCC if not restrained by this court from violations of KFCC's rights.  KFCC has no adequate remedy at law, and therefore seeks injunctive relief under 15 U.S.C. § 1116 and such monetary relief to which it is entitled pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees.

WHEREFORE, KFCC demands judgment against Defendants, and prays for the following relief:

(1)    A Declaratory Judgment that the Reinstated Franchise Agreements expired, effective April 27, 2010;

(2)    Specific enforcement of the Franchisee's Post-Termination Obligations under the Reinstatement Agreements and Reinstated Franchise Agreements;

(3)    Judgment in favor of KFCC on its claims for payment due and owing under the Reinstated Franchise and Advertising Agreements, against the Defendants jointly and severally, plus late fees, interest charges, and finance charges, plus such amounts as accrue until judgment;

(4)    Judgment in favor of KFCC against the Defendants jointly and severally, for damages resulting from the Defendants' acts of unfair competition and trademark infringement during the period of time from the expiration of the Reinstated Franchise Agreements to the date of such judgment or the date of de-imaging, pursuant to 15 U.S.C. § 1117, including treble actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(5)    An award of KFCC's costs, attorneys' fees, expenses, pre- and post-judgment interest and any and all such other relief as it may be entitled.

(6)    An order requiring the Defendants to file with the Court and serve on Plaintiff's counsel an accounting and report of all sales made at or from the Restaurants beginning from the date of the Defendant's failure to pay the required royalties and advertising fees until the Defendants cease operations of the Restaurants as KFC Restaurants;

KF000:KF116:802697:1:LOUISVILLE

(7)     An order enjoining Defendants from operating or doing business under any name or in any manner that might tend to give the general public the impression that the Reinstated Agreements are still in force or that the Restaurants are authorized KFC Restaurants, including;

(a)     Enjoining Defendants from operating the Restaurants as KFC Restaurants;

(b)     Enjoining the Defendants from making, using, or availing themselves of any of KFC's Marks, the KFC System, KFCC's methods of preparation and service of KFCC brand chicken and other proprietary food products, designs, or other information imparted by KFCC in connection with the Restaurants and from disclosing or revealing any such information or any portion thereof to others;

(c)     Enjoining Defendants from occupying, constructing, equipping, ordering, or assisting any person or persons in the occupation, construction, or equipping of any premises incorporating the distinctive features or equipment layout which KFCC has originated and developed and which are identifying characteristics of premises operated by KFCC franchisees;

(d)     Requiring that Defendants immediately return to KFCC the KFC Confidential Manual, together with all other materials containing any of KFCC's trade secrets, confidential materials, operating instructions or business practices used in the Restaurants;

(e)     Requiring that Defendants, through de-imaging the interior and exterior of the Restaurants pursuant to KFCC's standards, including the requirements to:  (1) discontinue the use and display of KFC's Marks and (2) discontinue the use and display of any and all signs, menu board inserts, point-of-sale materials, and printed goods bearing any KFC Marks or designs or any reference thereto; and

(f)      Requiring that the Defendants be required to file with the Court and serve on Plaintiff's counsel within 30 days after service of any injunction issued herein or within such reasonable time as the Court shall direct, a report in writing and under oath setting forth in detail the manner in which the Defendants have complied with such injunction.


Respectfully Submitted,


s/ *Margaret Grant*
Margaret Grant
pgrant@stites.com
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Phone: (502) 681-0503
Counsel for Plaintiff, KFC Corporation

- 21 -